UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FREDDIE HARRIS,

                           Plaintiff,

                                          9:09-CV-0705
v.                                      (LEK/GHL)

JUSTIN A. TAYLOR, JONATHAN  NOCERA,
ALAN TAYLOR,

                           Defendants.
_____

APPEARANCES:                       OF COUNSEL:

FREDDIE HARRIS, 00-A-4677
Plaintiff *pro se*
Mohawk Correctional Facility
P.O. Box 8451
Rome, NY 13440

HON. ANDREW M. CUOMO           ROGER W. KINSEY, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Freddie Harris, an inmate in the custody of the New York Department of Correctional

Services ("DOCS"), alleges that Defendants Justin Taylor and Jonathan Nocera violated his

constitutional rights by confiscating and inspecting his outgoing mail to the Internal Revenue

Service.  He further alleges that Defendant Alan Taylor violated his constitutional rights when he conducted a disciplinary hearing on charges that Plaintiff attempted to file false tax returns. Currently pending before the Court is Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Dkt. No. 19) and Defendants' cross-motion for summary judgment  (Dkt. No. 20).  For the reasons that follow, I recommend that Plaintiff's motion be denied and Defendants' motion be granted.

## I.     FACTUAL AND PROCEDURAL SUMMARY

On April 21, 2008, Plaintiff wrote to the District Attorney of Kings County, asking him to prepare and file IRS form 1099OID reflecting an "appearance bond in the amount of $15,000,000."  Plaintiff asserted that it was "mandatory" that the District Attorney file the form and that "if a response is not received . . . within [ten] days . . . it will be assumed that you have chosen to dishonor me."  (Am. Compl., Dkt. No. 16 at 9-10.)

On May 5, 2008, Plaintiff wrote to the District Attorney again.  He stated that the District Attorney was in "serious tax delinquency" because he had not responded to Plaintiff's previous letter.  Plaintiff stated that if the District Attorney did not respond within five days, he would file his own 1099OID listing the District Attorney as "the originator of the eligible issue(s), the payer tax I.D. number as being 'refused'."  (Dkt. No. 16 at 12-13.)

On May 15, 2008, the District Attorney's office responded that it had received Plaintiff's correspondence and was "unable to assist" Plaintiff.  (Dkt. No. 16 at 14.)

In early 2008, the mailroom at Gouverneur Correctional Facility ("GCF"), where Plaintiff was then incarcerated, received an unusual amount of inmate mail addressed to the IRS.  All of the mail was from different inmates, but each envelope was addressed with the same

2

handwriting.  Defendant Justin A. Taylor ("Taylor"), the superintendent of GCF, was informed of this fact and that a publication titled *The American Bulletin* was circulating in the prison.  *The American Bulletin* advocated the filing of fraudulent tax returns by inmates as a form of protest. (Taylor Decl., Dkt. No. 20-3 ¶ 5.)  Taylor was familiar with a similar scheme that had occurred earlier in his career at a different facility.  (Taylor Decl. ¶ 6.)

Taylor contacted John Crowley, a New York State Department of Correctional Services ("DOCS")  Inspector General Investigator.  Crowley provided Taylor with details of a tax scheme at a different facility in which inmates claimed false withholding credits attributed to "appearance bonds."  The inmates used IRS forms 1099INT, 1099OID, 1096, 1040, and letters to District Attorneys requesting an IRS filing based on their indictment number and social security number.  The scheme Crowley described was nearly identical to the examples provided in *The American Bulletin*.  (Taylor Decl. ¶ 8.)

Taylor believed that in order to investigate whether a similar scheme was taking place at GCF, he would need to open and review inmate mail addressed to the IRS.  (Taylor Decl. ¶ 9.) Taylor reviewed DOCS Directive No. 4421, dated May 11, 2001.  (Taylor Decl. ¶ 10.)  Under Directive 4421, any correspondence by an inmate to a federal agency is classified as "privileged correspondence."  Such correspondence "shall not be opened, inspected, or read without express written authorization from the facility superintendent."  The superintendent "shall not authorize the reading of . . . privileged correspondence unless there is a reason to believe that . . . any applicable state or federal law has been violated, or that the content of such correspondence threatens the safety, security, or good order of a facility or the safety or well being of any person."  The superintendent's authorization must be in writing and set forth the facts forming

the basis for the action.  The directive advises superintendents to consult with the DOCS office

of counsel before issuing such an authorization.  If, after reading the contents of privileged

correspondence, there is reason to believe that, *inter alia*, federal law has been violated, the

correspondence may be confiscated.  If the correspondence is confiscated, the inmate must be

given written notice unless doing so would be inconsistent with the need to safeguard an

investigation.  (Defs.' Ex. A, Dkt. No. 20-5.)

 Taylor contacted DOCS Associate Counsel Thomas Goetz and explained the situation to

him.  Based on the facts Taylor gave him, Goetz advised that Taylor had sufficient reason to open

and review the contents of the envelopes addressed to the IRS.  (Taylor Decl. ¶ 12.)  Thereafter,

Taylor prepared an authorization to open the suspected envelopes.  He personally opened the

envelopes.  The envelopes contained IRS forms 1099INT, 1099OID, 1096, 1040, and letters to

District Attorneys requesting an IRS filing based on the inmates' indictment numbers and social

security numbers.  Each return sought an IRS refund in excess of several hundred thousand

dollars.  (Taylor Decl. ¶ 14.)

 Taylor opened an envelope from Plaintiff addressed to the IRS.  It contained a 1099OID

form claiming that District Attorney Charles J. Hynes withheld a total of $15,000,000 in federal

income tax as "holder in due course" for Plaintiff.  It also included a 1096 form in which Plaintiff

claimed $15,000,000 in income for 2008 as a result of an "appearance bond" and $4,200,000 in

federal income tax had been withheld from his income in 2008.  (Taylor Decl. ¶ 21.)

 On January 22, 2008, Defendant Jonathan Nocera, an investigator in the DOCS Inspector

General's office, was assigned to investigate the possible tax scheme at GCF.  (Nocera Decl.,

Dkt. No. 20-2 ¶ 9.)  As part of his investigation, he reviewed the mail to the IRS that Taylor had

4

confiscated.  Defendant Nocera found that all of the confiscated mail was "consistent with the tax

scam advocated in *The American Bulletin*."  (Nocera Decl. ¶ 11.)  Based on conversations with

Special Agent Kelly Ewald of the IRS Criminal Investigations Division, Nocera determined that

the inmates' tax forms "had the hallmarks of a fraudulent tax return" and that they were "most

likely part of a prison-based tax scam to defraud the Internal Revenue Service."  (Nocera Decl. ¶

12.)

    Regarding Plaintiff's mail to the IRS, Nocera considered it to be part of a tax scam

because (1) it demanded an excessive tax refund; (2) it lacked supporting documentation

substantiating a tax refund in that amount; (3) Plaintiff had listed a private address rather than his

current address as an inmate; and (4) Plaintiff had used tax forms 1099OID and 1096 to claim

large withholding credits attributed to an appearance bond.  (Nocera Decl. ¶ 13.)  Plaintiff

correctly notes that the assertion by Defendant Nocera regarding his return address is inaccurate.

(Dkt. No. 22 at 7.)  Plaintiff's envelope to the IRS listed GCF as his return address.  (Defs.' Ex.

C, Dkt. No. 20-7.)

    On June 30, 2008, Taylor sent Plaintiff a letter informing him that his IRS forms had been

confiscated.  (Taylor Decl. ¶ 22.)

    Over nine months later, on April 10, 2009, Defendant Nocera issued a misbehavior report

charging Plaintiff with soliciting and making false and misleading statements.  (Dkt. No. 16 at

15; Taylor Decl. ¶ 23; Nocera Decl. ¶ 16.)  The report stated that "it was found that [Plaintiff]

submitted a fraudulent U.S. Income Tax Return . . . This was done in an attempt to solicit the IRS

for monies he was not entitled. [Plaintiff] admitted this during interview."  (Dkt. No. 16 at 15.)

    Defendant Alan Taylor ("A. Taylor") conducted a disciplinary hearing on April 16, 2009.

(Dkt. No. 20-10; Taylor Decl. ¶ 24; Nocera Decl. ¶ 17.)  Plaintiff testified at the hearing.  (Dkt. No. 20-10; Taylor Decl. ¶ 25.)[1]  Defendant A. Taylor found Plaintiff guilty and sentenced him to four months in the Special Housing Unit ("SHU") and the loss of various privileges.  (Taylor Decl. ¶ 26; Nocera Decl. ¶ 17.)  In his written disposition, Defendant A. Taylor stated that the evidence he relied on was the misbehavior report and a statement that had been prepared by Defendant Nocera and signed by Plaintiff.  (Dkt. No. 16 at 17.)  Plaintiff appealed.  The disposition was later reversed by Norman R. Bezio, the Director of the Special Housing/Inmate Disciplinary Program.  (Dkt. No. 16 at 18; Dkt. No. 19-4 at 37.)

On June 11, 2009, Defendant Nocera completed his investigative summary report and concluded that fourteen inmates had attempted to file fraudulent tax returns.  All fourteen inmates were found guilty of prison disciplinary charges.  (Nocera Decl. ¶ 18.)  All of the confiscated tax returns and tax forms were forwarded to the IRS' Criminal Investigative Division for further investigation and possible criminal prosecution.  (Nocera Decl. ¶ 19.)  A federal grand jury in this District later returned indictments against a number of inmates for running prison-based tax refund schemes between 2003 and 2005.  (Taylor Decl. ¶ 30.)

In this action, Plaintiff alleges that Defendants Taylor and Nocera violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments by confiscating his mail and inspecting it outside of his presence.  (Dkt. No. 16 ¶ 7.)  He further alleges that Defendant A. Taylor violated his Eighth and Fourteenth Amendment rights "when he allowed a defective disciplinary hearing to commence."  *Id.*

---

[1]     Defendant Taylor declares that Defendant Nocera testified at the hearing (Taylor Decl. ¶ 26), but the hearing transcript (Dkt. No. 20-10) does not indicate that Defendant Nocera did so.

Plaintiff now moves for summary judgment.  (Dkt. No. 19.)  Defendants have opposed

the motion and filed a cross-motion for summary judgment.  (Dkt. No. 20.)  Plaintiff has filed a

reply.  (Dkt. No. 22.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c)(2).  The party moving for summary judgment bears the initial burden

of showing, through the production of admissible evidence, that no genuine issue of material fact

exists.  Only after the moving party has met this burden is the nonmoving party required to

produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin v. Goord*,

467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party must do more than "rest upon the

mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some

metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*.,

475 U.S. 574, 585-86 (1986).  Rather, a dispute regarding a material fact is *genuine* "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether a genuine

issue of material[2] fact exists, the Court must resolve all ambiguities and draw all reasonable

inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d

---

[2]        A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson*, 477 U.S. at 248.

290, 309 (2d Cir. 2008).

**B.     Legal Standard Governing Motion to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of

Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion

is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure

to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise*

*General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted]; *accord*, *Katz*

*v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a

Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper

with or without notice to the parties.").  Accordingly, it is appropriate to summarize the legal

standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure

12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.

 In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*,

"a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means

that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether

a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

## III.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.    First Amendment

Plaintiff alleges that Defendants Taylor and Nocera violated his First Amendment rights by confiscating and inspecting his mail to the IRS. (Dkt. No. 16 ¶ 7.) Defendants argue that this claim should be dismissed. (Dkt. No. 20-19 at 9-18.) Defendants are correct.

"A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). A prisoner's right to receive and send mail may, however, be regulated. *See, e.g., Davidson v. Mann*, 129 F.3d 700, 702 (2d Cir. 1997.) When challenges are brought to such regulations, "courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Davis,* 320 F.3d at 351. District courts in the Second Circuit have articulated the test for analyzing regulations on prisoners' mail in two ways. Some

courts have applied the formulation set out in *Davis*, which states that "[r]estrictions on prisoners' mail are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation and must be no greater than is necessary or essential to the protection of the governmental interest involved." *Id*. (citations and punctuation omitted).[3] Other courts have applied the formulation set out in *Turner v. Safley*, 482 U.S. 78, 89 (1987), which states that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.[4]  The Second Circuit itself has applied both standards.  *Davis*, 320 F.3d at 351 (applying *Davis* test to prisoner's claim that mailroom clerk, on two occasions, opened outgoing legal mail); *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (applying *Turner* test to prisoner's challenge to prison regulation limiting keeplock prisoners to one stamp per month for personal, non-legal use); *Duamutef v. Hollins*, 297 F.3d 108 (2d Cir. 2002) (applying *Turner* test to prisoner's claim that prison officials violated his First Amendment rights by placing a watch

---

[3]      Examples of courts applying the *Davis* test include *LeBron v. Selsky*, No. 05-CV-172, 2009 U.S. Dist. LEXIS 126401, at *35-36, 2009 WL 6312275, at *11 (N.D.N.Y. Sept. 11, 2009) (Suddaby, J.) (Homer, M.J.) (applying *Davis* test to prisoner's claim that prison officials violated his First Amendment rights by placing him under a 'mail watch' and monitoring all of his outgoing mail) and *Midalgo v. Bass*, No. 9:03-CV-1128, 2006 U.S. Dist. LEXIS 69030, 2006 WL 2795332, at *12 (N.D.N.Y. Sept. 26, 2006) (Mordue, C.J.) (Treece, M.J.) (applying *Davis* to prisoner's claim that officer read his outgoing legal mail).

[4]      Examples of courts applying the *Turner* test include *Robinson v. New York State Dept. of Correctional Services*, No. 9:08-CV-911, 2009 U.S. Dist. LEXIS 92294, at *29-36, 2009 WL 3246818, at *10-11 (N.D.N.Y. Sept. 30, 2009) (McAvoy, J.) (DiBianco, M.J.) (applying *Turner* to prisoner's claim that his outgoing mail was delayed while commissary purchase of stamps was processed) and  *Mitchell v. New York State Dept. of Correctional Services*, No. 06-CV-6278, 2009 U.S. Dist. LEXIS 5157, at *11-14, 2009 WL 185757, at *3 (W.D.N.Y. Jan. 26, 2009) (applying *Turner* to prisoner's claim that mailroom tampered with his mail).

on all of his outgoing and incoming non-privileged mail).

Defendants' conduct here satisfies either standard. Confiscating and inspecting the envelopes addressed to the IRS furthered the substantial governmental interests of security and order because Defendants Taylor and Nocera reasonably concluded, based on their knowledge of other prison tax schemes and the fact that *The American Bulletin* was advocating the use of similar methods at GCF, that inmates were attempting to file false and misleading tax returns. Defendants took steps no greater than necessary to investigate their reasonable suspicions. Therefore, I find that Defendants' conduct was constitutional pursuant to the *Davis* standard.

As for the *Turner* standard, the burden is on the plaintiff to show that Defendants' conduct was not reasonably related to legitimate penological interests. *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004). Plaintiff has not produced any evidence that would allow a reasonable juror to reach that conclusion. The Second Circuit "has repeatedly found, without doubt, a valid, rational connection between the decision to impose a watch on a prisoner's mail and the desire to ensure the good order of the prison and the rehabilitation of prisoners by preventing a prisoner from engaging in illegal activities while incarcerated." *Duamutef*, 297 F.3d at 112 (citation and punctuation omitted); *see also United States v. Workman*, 80 F.3d 688, 699 (2d Cir. 1996) ("The investigation and prevention of ongoing illegal activity constitute legitimate penological objectives."). Here, the undisputed facts show that Defendants Taylor and Nocera inspected the outgoing mail to the IRS in order to prevent illegal activity. Therefore, I find that Defendants' conduct was constitutional pursuant to the *Turner* standard. Accordingly, I recommend that the Court grant Defendants' motion for summary judgment dismissing Plaintiff's First Amendment claim.

11

B.      **Fourth Amendment**

Plaintiff alleges that Defendants Taylor and Nocera violated his Fourth Amendment rights when they confiscated and inspected his mail to the IRS.  (Dkt. No. 16 ¶ 7.)  Defendants have not addressed this argument.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches . . . shall not be violated."  U.S. Const. amend IV.  "What is reasonable, of course, depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself."  *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) (internal quotation marks and citation omitted).  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."  *Skinner*, 489 U.S. at 619 (internal quotation marks and citations omitted).  In so doing, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (citations omitted), *accord*, *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992).  Where a search is conducted in prison, the standard applied is the *Turner* test.  *Covino*, 967 F.2d at 75; *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998) ("[T]he interception of [an inmate's] correspondence does not violate that individual's First or Fourth Amendment rights if prison officials had 'good' or 'reasonable' cause to inspect the mail.").   As discussed above, Defendants' conduct satisfies the *Turner* test.  Therefore, I recommend that the Court *sua sponte* dismiss Plaintiff's Fourth Amendment claim.

## C.  Eighth Amendment

Plaintiff alleges that Defendants violated his Eighth Amendment rights.  (Dkt. No. 16 ¶ 7.)  Defendants have not addressed this claim.

In order for Plaintiff to state a claim under the Eighth Amendment, he must show: (1) that the conditions of his confinement resulted in a deprivation that was *sufficiently serious*; and (2) that the defendants acted with *deliberate indifference* to his health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005).  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  In considering the types of conditions that constitute a substantial risk of harm, the court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but also any indications that unwilling exposure to that risk violates contemporary standards of decency, in that society does not choose to tolerate this risk in its prisons.  *Helling v. McKinney*, 509 U.S. 25, 36, 113 S. Ct. 2475, 2482 (1993).

None of Plaintiff's allegations against Defendants Taylor and Nocera suggest that they were deliberately indifferent to any condition that posed an excessive risk to Plaintiff's health or safety.  As to Defendant A. Taylor, Plaintiff may be attempting to allege that A. Taylor violated his Eighth Amendment rights by sentencing him to serve a four-month sentence in the SHU.  However, the complaint's allegations regarding Plaintiff's SHU confinement do not state an Eighth Amendment claim.  Although the service of a disciplinary sentence under ordinary conditions prevailing in the SHU "may implicate other constitutional rights, [it] does not rise to a

level of constitutional significance under the Eighth Amendment and . . . fails to support a claim

of cruel and unusual punishment under that provision." *Monroe v. Janes*, No. 9:06-CV-0859

FJS/DEP, 2008 U.S. Dist. LEXIS 13029, 2008 WL 508905 at *7 (N.D.N.Y. Feb. 21, 2008)

(dismissing Eighth Amendment claim where prisoner alleged merely that he had served 76 days

in the SHU) (*citing Warren v. Irvin*, 985 F. Supp. 350, 357 (W.D.N.Y. 1997)).[5] Here, Plaintiff

does not allege that his confinement in the SHU was served in anything other than ordinary

conditions.  Thus, he has not alleged or presented evidence of any cruel and unusual punishment

that would provide the foundation for an Eighth Amendment claim.  Therefore, I recommend that

the Court *sua sponte* dismiss Plaintiff's Eighth Amendment claims.

### D.     Due Process

Plaintiff alleges that Defendant A. Taylor's conduct during the disciplinary hearing

violated his right to due process.  (Dkt. No. 16 ¶ 7.)  Defendants argue that this claim should be

dismissed.  (Dkt. No. 20-19 at 18-19.)  Defendants are correct.

In order to prove a claim that his procedural due process rights were violated, a plaintiff

must show that he was deprived of a liberty interest without due process of law.  *Tellier v. Fields*,

280 F.3d 69, 79-80 (2d Cir. 2000).

An inmate has a liberty interest in remaining free from a confinement or restraint where

(1) the state has granted its inmates, by regulation or statute, an interest in remaining free from

that particular confinement or restraint; and (2) the confinement or restraint imposes "an atypical

---

[5]     The Court will provide Plaintiff with a copy of this unpublished decision in
accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier*, 280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU." *Palmer v. Richards*, 364 F.3d 60, 64 n.2 (2d Cir. 2004). The issue, then, is whether Plaintiff's confinement in the SHU imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."

In the Second Circuit, determining whether a disciplinary confinement in the SHU constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement." *Palmer*, 364 F.3d at 64. For SHU confinements of an "intermediate duration - between 101 and 305 days - development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64-65. Here, where Plaintiff was sentenced to four months in the SHU, neither party has produced any evidence regarding the conditions Plaintiff faced in the SHU and how they compared to routine prison conditions. In the absence of a detailed record from either party, I will turn to the issue of whether Plaintiff received all the process he was due.

Due process is satisfied if an inmate facing disciplinary charges receives (1) advanced written notice of the charges against him; (2) a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; (3) a fair and impartial hearing officer; and (4) a written statement of the disposition, including the evidence relied upon and the reasons for the

15

disciplinary actions taken. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). In some circumstances, such as where the inmate is illiterate or where the complexity of an issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, an inmate may also be entitled to assistance from another inmate or from prison staff in preparing his defense. *Id*. at 570.

Plaintiff argues that he did not receive fair notice of the hearing. (Dkt. No. 16 at 6.) Fair notice requires the charging officer "to be sufficiently specific as to the misconduct with which the inmate is charged to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report." *Taylor v. Rodriguez*, 238 F.3d 188, 192-93 (2d Cir. 2001) (punctuation and citation omitted). Plaintiff argues that he did not receive fair notice because Defendant Nocera's "misbehavior report [wa]s approximately [eleven] months old [a]nd . . . was never served on Plaintiff within [twenty-four] hours before [the] hearing." (Dkt. No. 16 at 6.) The hearing transcript indicates that Plaintiff testified that he was served with a copy of the misbehavior report on April 14, 2009, at 7:15 a.m. (Defs.' Ex. F, Dkt. No. 20-10 at 2.) The hearing began fifty-two hours later, on April 16, 2009, at 11:35 a.m. *Id*. The charges in the misbehavior report were not vague, and fifty-hours was a sufficient period of time for Plaintiff to prepare a defense. Therefore, I find that Plaintiff has not raised a triable issue of fact regarding his claim that he received constitutionally insufficient notice.

Plaintiff does not appear to allege that he was denied his right to call witnesses. The hearing transcript indicates that he did not request anyone to testify in his behalf. (Dkt. No. 20-

16

10 at 2.)

The complaint, read broadly, may allege that Defendant A. Taylor was not impartial. Specifically, Plaintiff alleges that Defendant A. Taylor "ignor[ed] the Plaintiff's documentary evidence." (Dkt. No. 16 at 6.)  It is well settled "that the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally." *Espinal v. Goord*, 180 F. Supp. 2d 532, 539 (S.D.N.Y.2002) (citing *Francis v.. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989)).  Due process in this context requires only that the hearing officer's decision not be "arbitrary." *Wolff*, 418 U.S. at 571.  A decision is not "arbitrary" if it is supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  "This standard is extremely tolerant and is satisfied 'if there is *any* evidence in the record that supports' the disciplinary ruling." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (emphasis in original) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).  Here, the evidence shows that Defendant A. Taylor's ruling was not arbitrary.  At the hearing, Plaintiff testified that he had read *The American Bulletin*, which said that the District Attorney's office "is using our social security numbers and they opened up (inaudible) in our names.  So I had decided my freedom of right, my [F]irst [A]mendment right and I wrote to the District Attorney two letters . . . and asked him if it was true.  They ignored me . . . and just told me they cannot assist me." (Dkt. No. 20-10 at 3.)  Plaintiff testified that *The American Bulletin* instructed that if an inmate was ignored by the District Attorney, he would "have to bring them up on the Federal level.  So what I did from that point on, I got a 1099 and a 1096 . . . and I mailed [them] to the IRS . . . I was only exercising my . . . [F]irst [A]mendment right . . . I have a right to communicate with the outside world.  So I wanted to see if this stuff was true . . . I wasn't trying to do nothing illegal.  I was just, it was

17

information that I was given and I wanted to see how true it was.  It's not something I was doing

on my own.  I wasn't trying to get no money from the IRS.  I was just trying to report the District

Attorney Office to the IRS.  As this thing tells us how to do it." (Dkt. No. 20-10 at 4.)  Plaintiff

testified that, contrary to Defendant Nocera's statement in the misbehavior report that Plaintiff

admitted that he prepared the tax forms "in an attempt to solicit the IRS for monies he was not

entitled" (Dkt. No. 16 at 15), "I was only . . . answering the questions that he . . . asked me and I

signed the report that he made.  But, it seems like he's trying to make it seem like I submit to his

fraudulent (inaudible) or something like that." (Dkt. No. 20-10 at 5.)  After Plaintiff testified,

Defendant A. Taylor adjourned the hearing until April 20, 2009.  (Dkt. No. 20-10 at 6.)  When

the hearing reconvened, Plaintiff stated again that he had not done anything illegal.  (Dkt. No. 20-

10 at 7.)  Defendant A. Taylor adjourned the hearing to prepare his written disposition.  *Id*.

Defendant A. Taylor reconvened the hearing on April 22, 2009.  He found Plaintiff guilty of both

charges, stating that he relied on the misbehavior report.  *Id*.  Given the evidence before him,

Defendant A. Taylor's disposition was based on sufficient evidence.  Although Plaintiff asserted

that he was simply trying to get information, the forms he prepared indicated, under penalty of

perjury, that over $4 million dollars in federal income tax were withheld in 2008.  It was not

arbitrary for Defendant A. Taylor to conclude that a reasonable person with Plaintiff's income

(*see* Dkt. No. 2) could not have believed this to be true.  The fact that Defendant A. Taylor's

decision was subsequently administratively reversed (Dkt. No. 19-4 at 37) does not change this

analysis.  "New York law requires prison disciplinary rulings to be supported by sufficiently

relevant and probative information to constitute *substantial* evidence. This requirement is sterner

than the 'some evidence' standard necessary to afford due process." *Sira*, 380 F.3d at 76 n. 9

(emphasis added).  Thus, although Defendant A. Taylor's decision may not have complied with

New York law, it was based on sufficient evidence to satisfy the federal Due Process Clause.

Plaintiff does not appear to allege that he was denied his right to assistance at the hearing.

The hearing transcript indicates that he waived his right to an assistant.  (Dkt. No. 20-10 at 2.)

Therefore, I find that Plaintiff has not raised a triable issue of fact that Defendant A. Taylor

violated his right to procedural due process.  Accordingly, I recommend that the Court grant

Defendants' motion for summary judgment dismissing this claim.

## IV.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Because I find that Defendants are entitled to summary judgment dismissing each of

Plaintiff's claims, I recommend that the Court deny Plaintiff's motion for summary judgment

(Dkt. No. 19).

**ACCORDINGLY**, it is

**ORDERED** that the Clerk  provide Plaintiff with a copy of *Monroe v. Janes*, No. 9:06-

CV-0859 FJS/DEP, 2008 U.S. Dist. LEXIS 13029, 2008 WL 508905 at *7 (N.D.N.Y. Feb. 21,

2008) in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d

Cir. 2009); and it is further

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 19) be

**DENIED**; and it is further

**RECOMMENDED** that Defendants' cross-motion for summary judgment (Dkt. No. 20)

be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: July 14, 2010
        Syracuse, New York

George H. Lowe
United States Magistrate Judge

20